Common Pleas Court of Ashland County.

In re R. B. Campbell, Executor.

Decided, July 18, 1912.

*Executors and Administrators—Final Account Long Delayed—Exceptions Thereto—Finding by Referee as to Amount Due—Ten Years Statute of Limitations Not Applicable to Claims by Executor for Disbursements Made—Sections 10835, 11226 and 10606.*

1. Upon exceptions being filed to a long delayed final account by an executor and reference of the matter for ascertainment as to the amount due, it is not competent for the referee to reopen an account filed twenty years before and to which no exceptions were ever filed.

2. An executor is not barred by the ten years statute from claiming credits for disbursements made more than ten years prior to the rendering of his final account.

Appeal from probate court, in the matter of the exceptions to the final account of R. B. Campbell, executor of the estate of Drusilla Akins, deceased.

Devor, J.

R. M. Campbell, as executor of the estate of Drusilla Akins, deceased, filed his final account on April 2, 1910. Exceptions were filed to this final account on April 30, 1910. The probate court disposed of the matter, and an appeal was taken to this court by the executor. After several delays the matter was, by agreement of the parties, referred to J. F. Henderson, who was appointed referee, on January 23, 1912, to hear the matter and report his proceedings on the facts and law in forty days. A report was filed by him on March 12, 1912, and for irregularities therein, the report was referred back to him for correction. On May 1, 1912, his report, as corrected, was refiled, and the matter is now before this court to be disposed of.

The referee finds against the executors in the sum of $2,800.21, with interest thereon for nineteen years and four months. Exceptions were duly filed by the executor to this finding. After the report was filed in this court a motion for new trial was filed. Then, later, a motion was filed to vacate the report, for irregularities in the proceedings of the referee.

A motion was filed by the exceptors, to strike from the files the motion of the executor for a new trial.

The motion to strike from the files the motion for a new trial is sustained, and it is ordered that the motion for new trial be stricken from the files, for the reason that the same should have been filed before the reference.

The motion to vacate the report of the referee for irregularities in his proceedings is overruled, because there has been too much delay in this case already, and because the irregularities complained of are simply matters of form and not of substance.

This leaves this matter for disposition by the court, upon the report of the referee, exceptions thereto, and a motion to confirm the report.

The facts preceding this matter are substantially as follows: An aged couple, Amor Akins and Drusilla Akins, possessed of about $9,000 of personal property, were fast approaching the end of life. They had no children to help them in their declining years and look after their property interests. Amor Akins died January 20, 1889, willing all his property to his wife, Drusilla Akins. Not having long to live, she called upon R. M. Campbell to write her will, which he did on May 23, 1889. On August 8, 1889, Lamertine Greenwald wrote a second will for her. On August 12, 1889, the Probate Court of Ashland County appointed a guardian over her property, upon the application of Dr. R. C. Kinnaman, and she died on August 30, 1889.

On September 2, 1889, the first will written by R. M. Campbell was filed for probate. On September 5, 1889, the last will written by Lamertine Greenwald was filed for probate. On September 12, 1889, the first will, written by Campbell, was probated,

and he was duly appointed the executor under said will.    On September 14, 1889, the probate court refused to probate the last will written by Greenwald, and not long thereafter Greenwald was sentenced to the Ohio penitentiary for forgery, and that ended his interest in this estate.    R. M. Campbell gave bond as executor, and took possession of all the estate of Drusilla Akins, deceased.

He followed the biblical command to "Make to yourselves friends by means of the mannon of unrighteousness."    The neighbors and friends of the Akins were paid liberally for boarding and for their kindnesses and attention shown to the Akins during their lives.    The doctor, the undertaker, and others, as well as the attorneys at law, who were interested in the proceedings, were paid large sums of money, and the executor was making himself a general good fellow with the crowd on the Akins' estate.    Because there were no children the estate was regarded as kind of a free pie.    Everybody in the crowd was invited to have a slice, except Greenwald, who was on the outside, and was probably by the time this matter got safely under way, in jail or the penitentiary.    The only heirs of Drusilla Akins were two sisters, Eliza Metcalf and Sarah Tyron.    The executor, during this time, appears to have had the two sisters in his crowd, and they seem to have been pleased at the way things were going. It was anything to beat Lamertine Greenwald with them.    Now, recently, the case has been dug up by someone, probably Greenwald, and the executor is called upon to give an account of his stewardship.

Without writing too long an opinion in this matter, it appears to the court that the referee last sight of the issues or what he was to hear and determine in this case.    The matter was for hearing upon the final account of the executor, and the exceptions filed thereto.    The evidence and the report of the referee should have been confined to these matters.    The first partial account by the executor had been filed in the probate court, approved and settled over twenty years ago, and no exceptions of any kind were ever filed to this account.    The referee, however, opens up this account, and makes a number of findings against the allowance of certain claims therein.

The law of Ohio provides that upon every settlement of an account by an executor all his former accounts may be so far opened up as to correct any mistake or error therein; excepting that any matter of dispute between two parties which had been previously heard and determined by the court can not again be brought into question.  Section 10835, General Code.

The law of Ohio further provides, ''When an account is settled in the absence of the person adversely interested, and without actual notice to him, it may be opened on his filing exceptions to the account within eight months thereafter.''  You will note that the law provides that the account ''may be opened on his filing exceptions.''  It is not claimed by any one that there was any error or mistake in the first partial account. It is only contended that the claims of R. C. Kinnaman, $238.40, W. C. Frazee, $518.90, and J. B. Britton, $538.96, and several others, should not have been allowed and paid out of the funds of this estate as just and lawful claims.  A mistake is defined as some unintentional act, omission or error.  The allowance of these claims and the payment of them was, from all appearances, intentional, and not an error or mistake.  The items were all set out in this first partial account, and the interested parties in this estate had notice of this for over twenty years.  And without ever filing exceptions to any of these items, the referee was called upon and undertook to open up this first partial account and considered a number of the claims that were allowed and paid and in his report disallows them.  He went beyond his authority.  It appears that the probate judge, in his finding, did the same thing, and the referee followed the same course.

This first partial account had been on file, approved and settled October 5, 1891, by E. Finger, then probate judge, and the heirs and interested parties in this estate of Drusilla Akins were bound to ''give attention to this business'' and act within the law if they desired to contest any of the claims set out in the first partial account.  ''It is only where error or mistake in one account has intervened, that the court, on the filing of a subsequent one, can correct such mistake or error.''  *Campbell* v. *McCormack*, 1 C. C., 504.

"When an individual is fully advised of his rights and fully advised that these rights have been invaded or denied him, it becomes his duty to avail himself of the remedy the law affords within the time provided for such remedy." *Crawford* v. *Ziegler*, 84 Ohio St., 224, 232.

In *In re Leidigh*, 15 Dec., 193, 195, Judge Dirlam of Richland county held in an able opinion that "Upon proper exceptions all settlements may be opened up for fraud, mistake or error." Yet, in that case, Judge Dirlam said "I shall confine myself to those matters that are excepted to by the exceptors." This is the proper practice to pursue, as a general rule, and it was a mistake for the referee to consider any of the claims allowed and paid and set forth in this first partial account settled over twenty years ago.

The exceptions filed by the executor to the referee's finding of facts and conclusions of law on all matters settled and set forth in the first partial account are sustained. "An exception is an objection taken to a decision of the court upon a matter of law." Section 11559, General Code.

The court, therefore, finds that the referee erred in law in opening up the first partial account, without any exceptions filed to the same, this account having been filed by the executor on September 15, 1891, and having been approved and settled by the probate court upon October 5, 1891.

The final account of the executor and the exceptions thereto was all that the referee should have heard. In his final account the executor charges himself as follows:

April 13, 1892, sale of C. Z. Hughes notes ........... $1100.00

Balance on second note ......................... 50.00

Total ............................... $1150.00

The executor asks credits as follows:

Sept. 15, 1891, by amount overpaid as per former settlement ...................................$    98.36

Jan. 9, 1892, T. C. Harvey, county treasurer ....... 18.97

April 13, 1892, J. B. Brinton, balance account ...... 278.96
July 10, 1892, T. C. Harvey, county treasurer ........ 18.27
Dec. 8, 1892, Jacob Saal, county treasurer ......... 11.12
Dec. 12, 1892, H. H. Brubaker, on account .......... 50.00
Feb. 18, 1893, H. H. Brubaker, balance on account ... 250.00
July 21, 1893, Jacob Saal, county treasurer ......... 10.72
July 25, 1893, Campbell & Grosscup, account ........ 25.00
May 9, 1894, Sarah Tyron, on distribution .......... 75.00
May 18, 1894, R. M. Campbell, on account ......... 150.00
May 19, 1894, Eliza Metcalf, on distribution .......... 75.00
          Executor's commission ................ 23.00

     Total .............................$1084.40

Total receipts ...........................$1150.00
Total credits ........................... 1084.40

          Balance on hand ........................$   65.50

To this account exceptions were filed on April 30, in substance, as follows: First. Executor does not account for the personal property·as listed in schedule D of the inventory. Second. Excepts to the account which executor charges himself in sale of C. Z. Hughes notes. Third. Excepts because executor does not charge himself with interest on said trust fund. Fourth. Excepts to all the credits in the final account, generally and specifically, because it is said they accrued more than ten years prior to rendering said final account.

The referee finds that the executor sold household goods to the amount of $45, and did not in any of his accounts charge himself with the $45.

The referee finds that on April 12, 1892, there remained due and unpaid on the second of the C. Z. Hughes notes the sum of $61.72, and the present worth of the remaining nine notes against Hughes was $1,467.08, making a total due on the Hughes notes of $1,528.80. These notes were secured by first mortgage on property worth the amount, and the referee finds

392     ASHLAND COUNTY COMMON PLEAS.

In re Campbell, Executor.     (Vol. 13 (N.S.)

that the executor had no power in law to sell these notes, as he claims to have done by the order of the probate court.

The $1,528.80 on the Hughes notes plus the $45 from the sale of the household goods, makes a total credit, with which the executor should have charged himself, in the sum of $1,-573.80. This finding, by the referee, is approved, and the exceptions thereto are overruled.

Each and every one of the items of credit asked for by the executor in his final account are excepted to because it is claimed they accrued more than ten years prior to the rendering of this final account. Section 10606, General Code, provides that an executor shall render an account within twelve months after his appointment, and every twelve months thereafter, and at such other times as the court requires, until the estate is wholly settled. A final account was not ordered or required by the court until this final account that is now in question, and it appears that the ten years' limitation (Section 11226, General Code), does not apply. If the executor had refused to file a final account and plead the statute of limitations, it would be more in line with reason. The statute of limitations is not applicable to defeat the lawful and proper disbursements made by the executor out of the funds in his hands more than twenty years ago. To make such a holding would appear like a creditor suing the maker of a note upon which partial payments had been made and contending that because the note was not paid within six years after due, that the credits should be disallowed, and the entire note collected.

The referee, in his finding, reports that the following credits should be allowed, to-wit:

| | |
|---|---:|
| T. C. Harvey, county treasurer | $ 18.97 |
| T. C. Harvey, county treasurer | 18.27 |
| Jacob Saal, county treasurer | 11.12 |
| Jacob Saal, county treasurer | 10.72 |
| Sarah Tryon, on distribution | 75.00 |
| Eliza Metcalf, on distribution | 75.00 |
| On attorney fee to R. M. Campbell | 100.00 |
| Total | $ 309.08 |

The referee, in his finding, reports that the following credits should not be allowed, to-wit:

Amount overpaid on former account ...............$    98.36
J. B. Brinton, balance account ....................    278.96
H. H. Brubaker, account ........................    300.00
Campbell & Grosscup, account ....................     25.00
R. M. Campbell, personal account .................    150.00
Executor's commission ..........................     23.00

This leaves the account standing, as reported by the referee, as follows, to-wit:

Total charges against the executor ...................$1573.80
Total credits allowed to the executor .................    309.08
                                                    _____
Balance due from the executor ....................$1264.72

On this amount interest is allowed at 6 per cent. from September 14, 1891, to April 29, 1912, the first day of this term of court. The interest is computed for twenty years, seven months and fifteen days, and amounts to $1,465.08.

Total amount of principal and interest, $2,729.80.

The fund is thus more than doubled by the interest, and the court does not double the $45 for household goods and then add interest on the amount thus doubled, because it does not appear from the evidence that the household goods were disposed of for the executor's own benefit, any more than the rest of the estate.

Judgment is entered against the executor for the amount of $2,729.80, and all costs to date, including the fee of J. F. Henderson of $65 for his services as referee, and a fee of $35 for the stenographer, James E. Potts.